M. Elizabeth Graham, Esq. (Cal. Bar No. 143085)
**GRANT & EISENHOFER P.A.**
2325 Third Street, Suite 329
San Francisco, CA 94107
Telephone: (415) 293-8210
Facsimile: (415) 789-4367
Email: egraham@gelaw.com

*Attorneys for Plaintiff*
[Additional Counsel on Signature Page.]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 132 PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SVB FINANCIAL GROUP, GREGORY W. BECKER, and DANIEL J. BECK, Defendants.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT

Plaintiff International Union of Operating Engineers Local 132 Pension Fund ("Plaintiff"), on behalf of itself and all others similarly situated, by its undersigned attorneys, brings this action against Defendants SVB Financial Group ("SVB"), Gregory W. Becker, and Daniel J. Beck (collectively, "Defendants"). With knowledge of its own acts and acts occurring in its presence, and upon information and belief as to all other matters, Plaintiff alleges the following:

**SUMMARY OF THE ACTION**

1. This is a federal securities class action that asserts claims arising under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder on behalf of all investors who purchased SVB's securities between November 5, 2020 and March 10, 2023 (the "Class Period").

2. Until recently, SVB operated a regional bank under the "Silicon Valley Bank" brand, serving primarily the technology and healthcare industries with a focus on startups.

3. During the Class Period, SVB enjoyed a rapid rise in deposits, and poured the funds into Treasurys and mortgage-backed securities. Although those securities were unlikely to default, they were at risk of losing value if interest rates rose. With SVB's portfolio so heavily concentrated, it faced substantial downside if interest rates did in fact rise.

4. Even so, Defendants falsely downplayed the risks of SVB's concentrated portfolio, and assured investors that its banking operations were sound. When interest rates did begin to rise, Defendants continued downplaying SVB's potential exposure.

5. On March 8, 2023, after trading closed, SVB announced that it had sold "substantially all of its available for sale securities portfolio" at a loss of $1.8 billion. At the same time, SVB announced a planned sale of $2.25 billion of common and preferred stock in order to plug the loss. SVB said that these moves were necessary due to higher interest rates and deposit outflows, which in turn created a need to adjust SVB's securities portfolio. Recognizing SVB's precarious financial position, depositors began pulling funds while SVB's stock price plummeted 60% over the next day.

6. Trading of SVB stock was halted before markets opened on March 10, 2023. That morning, the Federal Deposit Insurance Corporation (the "FDIC") took control of SVB's banking operations in order to protect depositors. SVB stock remained halted over the following weeks.

7. On March 26, 2023, the FDIC announced that it had sold off all of SVB's deposits and loans to another bank.

8. Trading of SVB stock eventually resumed two days later on March 28, 2023. Since then, prices have consistently been *less than 1%* of their pre-collapse levels.

9. Defendants violated the federal securities laws by falsely downplaying SVB's exposure to interest rate changes, and misleadingly assuring investors that it was in good financial health. Defendants' failure to timely disclose these material facts caused the price of SVB's common stock to be artificially inflated, and damaged unsuspecting investors who purchased SVB shares during the Class Period.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the S.E.C. (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and under 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

12. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b), because SVB conducts business in this District and also maintains its corporate headquarters in this District.

13. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

# THE PARTIES

### A. Plaintiff

14. Plaintiff International Union of Operating Engineers Local 132 Pension Fund purchased SVB common stock during the Class Period and was damaged thereby.

### B. Defendants

15. SVB, a Delaware company headquartered in Santa Clara, California, until recently operated "Silicon Valley Bank," a regional bank that offered commercial clients deposit products such as checking accounts, money market accounts, and multi-currency accounts, and also provided various credit offerings including traditional term loans, revolving lines of credit, warehouse facilities, commercial letters of credit, and credit card programs. Silicon Valley Bank's clients included startups and venture-capital firms. SVB's common stock traded during the Class Period on the NASDAQ under the ticker "SIVB."

16. Defendant Gregory W. Becker was SVB's President and Chief Executive Officer during the Class Period.

17. Defendant Daniel J. Beck was SVB's Chief Financial Officer during the Class Period.

18. Defendants Becker and Beck are collectively referred to herein as the "Individual Defendants."

# FACTS

### False and Misleading Statements

19. During the Class Period, SVB's banking operations enjoyed explosive growth in deposits, which came largely from startups and venture capital firms in the technology industry. At the same time, SVB was investing the money heavily in fixed-rate low-yield Treasurys and mortgage-backed securities. As a result, both its deposit base and securities portfolio were heavily concentrated with little diversification, exposing SVB's banking operations to substantial risks.

20. The Class Period begins on November 5, 2020 to coincide with SVB's filing of its quarterly report for the third quarter of 2020.

21. Therein, SVB conceded that interest rate risk is its "primary market risk." Yet SVB also claimed that it manages that risk through "strategies involving [its] fixed income securities portfolio, available funding channels and capital market activities," as well as a "simulation model" that "provides a dynamic assessment of interest rate sensitivity" based on a variety of scenarios. Regarding its portfolio of available-for-sale securities, SVB said that the portfolio was "managed with the objective of earning an appropriate portfolio yield over the long-term while maintaining sufficient liquidity and credit diversification as well as addressing our asset/liability management objectives."

22. SVB also claimed to have conducted stress tests to ensure that its capital position was adequate. Among other things, SVB said that it "conduct[s] capital stress tests as part of [its] annual capital planning process," which allow it to "assess the impact of adverse changes in the economy and interest rates on [its] capital adequacy position." Similarly, SVB said it "routinely conduct[s] liquidity stress testing as part of [its] liquidity management practices." In light of those purported tests, SVB said it "maintain[s] an adequate capital base to support anticipated asset growth, operating needs, and credit and other business risks," as well as to ensure compliance with regulatory capital rules.

23. Each of SVB's subsequent periodic financial reports during the remainder of the Class Period contained substantially the same representations regarding interest rate risks, how SVB manages those risks, stress testing, and the adequacy of its capital base.

24. Defendants also provided commentary on relevant trends as the Class Period progressed. At SVB's fourth-quarter 2020 earnings call on January 21, 2021, Defendant Becker said it was the "best companies" driving the growth in SVB's deposits. He added that although "their burn rates may increase, we don't believe it will have a substantial impact."

25. Defendant Beck explained later at the April 23, 2021 earnings call that SVB was "strategically" investing in both short and long-term bonds across its available-for-sale and held-to-maturity portfolios in order to "protect" against the risk of price fluctuations and ensure liquidity. He said, "to the extent that we need to dip into that liquidity, we can certainly do it," and even went so far as to claim that "to the extent that we see rate movements, we would still

benefit in a strong way from it." Beck also pointed to SVB's hedging activity through interest rate swaps, stating that "we're going to continue to do more to . . . mitigate the impact of potential further rate movement."

26. At that same call, Defendant Becker denied that deposit outflows were a particular risk, boasting that SVB had only seen one year since 2006 where client funds "dropped a little bit." He added that "if the market really started to soften" there could be "some softness in deposits on a quarterly basis or maybe in a few quarters," but the strength of the "innovation market" that made up the bulk of its client base was strong and would "drive liquidity and deposits, balance sheet funds."

27. During SVB's second-quarter 2021 earnings call on July 22, 2021, Defendant Beck repeated that SVB was investing in Treasurys that allow it to get "as good of a yield as [it] can possibly get, and at the same time, protect the available-for-sale portfolio[.]" Separately, Defendant Becker responded to a question about whether rising inflation could impact SVB, claiming that SVB "would benefit significantly from increasing rates" because it would see income from its lending activities. Becker claimed that those benefits would "greatly outweigh the negatives."

28. Defendant Beck made similar statements in response to an analyst question during SVB's fourth-quarter 2021 call on January 20, 2022. He asserted that if interest rates increased by 75 to 125 basis points, clients would likely start to seek higher interest rates through products like money market accounts, which would still be "very low cost" to SVB. He concluded that the "liquidity that we have really plays in our favor" to be able to manage client migration to different products, which he said is a "competitive advantage."

29. Yet again during SVB's second-quarter 2022 earnings call on July 21, 2022, Beck said that SVB was "well positioned to the upside for higher rates" while "dampening the asset sensitivity" to higher rates. Beck added that SVB has "options" to manage its cash and liquidity, including off-balance sheet deposits, short-term wholesale borrowings, and cash flow from investment securities.

30. During SVB's earnings call on October 20, 2022, Defendant Beck assured investors that the "balance sheet is really flexible" and pointed to the various ways SVB could maintain liquidity. Asked about the available-for-sale portfolio, Beck said there was "no intent to restructure" the portfolio. Later, Beck claimed that SVB "continue[d] to see the benefits of higher interest rates."

31. At an industry conference on December 7, 2022, an analyst asked Defendant Beck about the pressure to sell securities in light of deposit outflows and specifically implored him to "put to rest why you don't see this as a risk" for SVB. Beck obliged, stating that SVB has access to borrowings that it can make against its investment securities portfolio that provides "about $70 billion worth of additional capacity there, before you even get to the available-for-sale book" of approximately $30 billion. He also said that SVB had been giving clients access to off-balance sheet accounts, allowing the bank to "utilize . . . this off-balance sheet set of dollars" totaling around $90 billion. Against approximately $176 billion of deposits, Beck concluded that "we can manage through" despite the presence of "margin pressure."

32. One month later during SVB's quarterly earnings call on January 19, 2023, Defendant Beck responded to another question about whether SVB was considering "any actions" in regard to its available-for-sale securities portfolio. Aside from an "opportunistic" sale of $1 billion of Treasurys and the possibility of other opportunistic moves, Beck said that "you're going to see . . . less of a broad review across available-for-sale and actions there." Asked again if anything was planned beyond the $1 billion sale, Beck again said "no."

33. Beck repeated that sentiment during another conference on February 14, 2023, merely claiming that SVB "may" make opportunistic sales of portions of its available-for-sale portfolio. Later during that same presentation, Beck denied that SVB's focus on the technology, healthcare, and life sciences industries for its clients created any excessive concentration risk because the "diversification of the number of different specialties within those areas" and SVB's international business "keeps us out of too much individual concentration."

**The Truth Gradually Emerges**

34. On July 21, 2022, SVB revealed among its second-quarter financial results that deposits had declined from the previous quarter, and that it expected slower deposit growth for the full-year than previously forecast. SVB also recorded a large loan loss provision on increased recession risk, as well as net losses on investment securities. As a result of these developments, quarterly earnings were far lower than analyst expectations. Defendant Becker attributed the weakness to "[c]hallenges in the public markets," which he said were "affecting liquidity flows to private companies" and in turn were undermining "private company valuations, hiring and performance expectations." On this news, the price of SVB stock fell $74.81 per share, or more than 17%, from a close of $436.17 per share on July 21, 2022, to close at $361.36 per share on July 22, 2022.

35. Then, on October 20, 2022, SVB announced third-quarter 2022 financial results, which reflected increasing deposit outflows and higher interest expenses due primarily to larger payments on interest-bearing accounts as a result of higher market rates. These trends contributed to low overall earnings, which again missed analyst estimates. In a letter to shareholders, Defendant Becker said that "[m]arket volatility and increasing economic uncertainty have reduced liquidity flows to private companies, as rising rates, lack of clarity on private valuations, and the risk of recession are keeping investors on the sidelines." On this news, the price of Company stock fell $72.43 per share, or nearly 24%, from a close of $302.46 per share on October 20, 2022, to close at $230.03 per share on October 21, 2022.

36. After trading closed on March 8, 2023, SVB announced that it had sold "substantially all of its available for sale securities portfolio," consisting primarily of U.S. Treasurys and Agency securities, at a loss of approximately $1.8 billion. The securities it sold had a yield of 1.79%, far below the existing 10-year Treasury yield of 3.98%. The Company said it planned to use the proceeds from the sale to reinvest in a "more asset-sensitive, short term [available-for-sale] portfolio." SVB also said that it intended to sell a total of $2.25 billion in common and preferred stock in public and private offerings. SVB blamed the situation on "continued higher interest rates, pressured public and private markets, and elevated cash burn

levels" from clients as they invest in their businesses. In essence, SVB needed to sell a large portion of its securities portfolio at a loss so that it could take advantage of higher yields and provide the flexibility to meet deposit outflows, and in turn had to resort to selling common and preferred stock to make up the loss.

37. When trading reopened on March 9, 2023, the price of SVB stock entered a freefall. Amid a series of halts to trading, the Company's stock plummeted $161.79 per share, or more than 60%, from a close of $267.83 per share on March 8, 2023, to close at $106.04 per share on March 9, 2023. The price cratering undermined the Company's ability to raise capital, further weakening its financial position in a vicious cycle. At the same time, SVB's depositors—many of whom had deposits over $250,000 and thus would not be covered by FDIC insurance—began pulling their money on fears that SVB would not be able to pay back deposits.

38. The FDIC took over SVB's banking operations on March 10, 2023. Trading of SVB stock did not resume that day, and remained halted in the following weeks.

39. On Sunday, March 26, 2023, the FDIC announced that First Citizens BancShares, Inc. ("First Citizens") had assumed all of SVB's deposits and loans. The transaction included an acquisition of approximately $72 billion of SVB's assets at a $16.5 billion discount, and the FDIC received equity appreciation rights in First Citizens common stock up to $500 million. The FDIC also reportedly extended $35 billion of borrowings to First Citizens in the form of a note, added a $70 billion line of credit, and will cover any losses on acquired commercial loans in excess of $5 billion for the next five years. Approximately $90 billion of SVB's assets, which includes certain securities, remained in receivership for disposition by the FDIC.

40. Trading of SVB stock eventually resumed on March 28, 2023 on the over-the-counter market. Since then, its price has only briefly surpassed $1.00 per share, resulting in a loss of over 99% to SVB shareholders.

## THE PRESUMPTION OF RELIANCE

41. Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material facts that there was a duty to disclose.

42.     Plaintiff is also entitled to a presumption of reliance on Defendants' materially false and misleading statements and omissions pursuant to the fraud-on-the-market doctrine because, during the Class Period, among other things:

(a)     Defendants made public misstatements or failed to disclose material facts;

(b)     The omissions and misstatements were material;

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

(e)     Plaintiff and other members of the Class purchased SVB common stock between the time Defendants made material misstatements or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misstatements or omitted facts.

43.     At all relevant times, the market for SVB common stock was efficient for the following reasons, among others:

(a)     SVB stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, SVB filed periodic public reports with the SEC; and

(c)     SVB regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

44.     Accordingly, Plaintiff and other members of the Class relied, and are entitled to have relied, upon the integrity of the market prices for SVB's common stock, and are entitled to a presumption of reliance on Defendants' materially false and misleading statements and omissions during the Class Period.

## CLASS ALLEGATIONS

45. Plaintiff brings this action as a class under Fed. R. Civ. P. 23 and seeks certification of a Class defined as follows: All persons or entities who purchased or otherwise acquired SVB securities during the Class Period and who were damaged thereby.

46. Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of SVB, members of the SVB Board and members of their immediate families; (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of SVB.

47. The members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff at this time, on information and belief there are at least thousands of members of the proposed Class. Members of the Class may be identified by trading records maintained by SVB and its transfer agents.

48. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the members of the Class are:

(a) whether Defendants' misrepresentations and omissions as alleged herein violated the federal securities laws;

(b) whether Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(c) whether Defendants' misrepresentations and omissions as alleged herein caused the Class members to suffer a compensable loss; and

(d) whether the members of the Class have sustained damages, and the proper measure of damages.

49. Plaintiff's claims are typical of the claims of the other members of the Class. Defendants' wrongful conduct has affected all members of the Class in a similar manner, as they have all sustained damages arising out of Defendants' misrepresentations and omissions in violation of the Exchange Act.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in class actions and securities law. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action on the other hand, would achieve substantial economies of scale with regard to time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Furthermore, the interests of the members of the Class in individually controlling the prosecution of separate actions are theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. Finally, as the damages suffered by some of the individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

**COUNT I**
For Violations of Section 10(b) of the Exchange Act and Rule 10b5-1 Promulgated Thereunder
(Against All Defendants)

52.     Plaintiff repeats and realleges every allegation contained above as if fully alleged in this Count.

53.     This cause of action is brought pursuant to §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

54.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to, and throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SVB stock at artificially inflated prices.

55.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period in an effort to maintain artificially high market prices for SVB securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

56. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal and misrepresent adverse material information about the business, operations, and financial results of SVB as specified herein.

57. During the Class Period, Defendants made or were responsible for the materially false and misleading statements and omissions alleged herein, which they knew or recklessly disregarded to be materially false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58. Defendants had actual knowledge of the materially false and misleading statements and omissions alleged herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal SVB's true condition from the investing public and to support the artificially inflated prices of the Company's securities.

59. Plaintiff and the Class have suffered damages. In reliance on the integrity of the market, they paid artificially inflated prices for SVB's securities. Plaintiff and the Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices for SVB's securities had been artificially inflated by Defendants' fraudulent course of conduct.

60. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

61. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

**COUNT II**
For Violations of Section 20(a) of the Exchange Act
(Against the Individual Defendants)

62. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63. This cause of action is brought pursuant to §20(a) of the Exchange Act, 15 U.S.C. §78t(a), on behalf of Plaintiff and the other members of the Class, against each of the Individual Defendants.

64. The Individual Defendants were controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level position, participation in, and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about SVB, Defendants Becker and Beck had the power and ability to control the actions of SVB and its employees, and to cause the Company to engage in the wrongful conduct alleged herein. Becker and Beck were able to and did control, directly and indirectly, the content of the public statements made by SVB during the Class Period, which include SVB's materially false and misleading financial statements contained therein, thereby causing the dissemination of the materially false and misleading statements and omissions of material facts as alleged herein.

65. As control persons of SVB, each of the Individual Defendants is jointly and severally liable pursuant to Section 20(a) of the Exchange Act to the same extent as SVB for its violations of Section 10(b) of the Exchange Act.

66. As a direct and proximate result of said wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of SVB securities.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

1. That the Court maintain this action as a Class action, that Plaintiff be named as Class Representative of the Class, that the undersigned be named as Lead Counsel for the Class, and direct that notice of this action be given to Class members;

2. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

3. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

4. Awarding such other relief as the case may require or as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a jury trial.

Dated: April 24, 2023
San Francisco, California

Respectfully submitted,

**GRANT & EISENHOFER P.A.**
*/s/ M. Elizabeth Graham*
M. Elizabeth Graham, Esq. (Cal. Bar No. 143085)
2325 Third Street, Suite 329
San Francisco, CA 94107
Telephone: (415) 293-8210
Facsimile: (415) 789-4367
Email: egraham@gelaw.com

Daniel L. Berger (*pro hac vice forthcoming*)
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com

*Attorneys for Plaintiff*

| | |
|---|---|
| 1 | M. Elizabeth Graham, Esq. (Cal. Bar No. 143085) |
| | **GRANT & EISENHOFER P.A.** |
| 2 | 2325 Third Street, Suite 329 |
| | San Francisco, CA 94107 |
| 3 | Telephone: (415) 293-8210 |
| | Facsimile: (415) 789-4367 |
| 4 | Email: egraham@gelaw.com |
| 5 | *Attorneys for Plaintiff* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 132 PENSION FUND, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CERTIFICATION ON BEHALF OF INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 132 PENSION FUND** |
| v. | |
| SVB FINANCIAL GROUP, GREGORY W. BECKER, and DANIEL J. BECK, Defendants. | |
| Defendants. | |

CERTIFICATION ON BEHALF OF INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 132 PENSION FUND

I, Charles A. Parker, on behalf of the International Union of Operating Engineers Local 132 Pension Fund ("IUOE Local 132"), certify pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4 as follows:

1. I am the Business Manager and Union Trustee of IUOE Local 132. I am familiar with the matters set forth herein and am duly authorized to make this certification on behalf of IUOE Local 132.

2. I have reviewed the securities class action against SVB Financial Group, Gregory W. Becker and Daniel J. Beck.

3. IUOE Local 132 did not purchase or acquire the securities of SVB Financial Group at the direction of counsel or in order to participate in any private action.

4. IUOE Local 132 is willing to serve as a representative party on behalf of the proposed class, including providing testimony at deposition and trial, if necessary.

5. Attached as Schedule A to this Certification is a list of IUOE Local 132's transactions during the Class Period in the SVB securities that are the subject of the above-captioned action.

6. During the three-year period preceding the date of this certification, IUOE Local 132 has not filed a complaint on behalf of a class asserting claims under the federal securities laws of the United States, nor has it moved to be appointed as lead plaintiff in any such case.

7. IUOE Local 132 will not accept any payment for serving as a representative party on behalf of the proposed class beyond its pro rata share of any recovery, except as ordered by the Court.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

By: *Charles A. Parker* 2023.04.24 11:53:22 -04'00'

Charles A. Parker, Business Manager and Union Trustee

1

CERTIFICATION ON BEHALF OF INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 132 PENSION FUND

## SVB Financial Group -- Schedule A
## International Union of Oprerating Engineers Local 132 Pension Fund

**Cusip:** 78486Q101
**Ticker:** SIVB
**Class Period:** November 5, 2020 through March 10, 2023

**Beginning Holdings:** 0 shares

| Purchases | | |
|---|---|---|
| Trade Date | Quantity | Price |
| 11/12/2020 | 617 | $329.20 |
| 11/12/2020 | 43 | $327.08 |
| 11/13/2020 | 118 | $340.94 |
| 11/13/2020 | 514 | $345.09 |
| 11/13/2020 | 43 | $341.22 |
| 11/13/2020 | 76 | $343.51 |
| 11/16/2020 | 190 | $353.56 |
| 11/16/2020 | 49 | $348.97 |
| 12/10/2020 | 903 | $351.07 |
| 2/1/2023 | 550 | $302.97 |
| 2/1/2023 | 325 | $302.53 |

| Sales / Transfer* | | |
|---|---|---|
| Trade Date | Quantity | Price |
| 12/22/2021 | 230 | $669.45 |
| 8/10/2022 | 409 | $455.35 |
| 8/10/2022 | 151 | $456.84 |
| 1/23/2023* | 1,763 | $291.44 |

| Post Disclosure Sale** | | |
|---|---|---|
| Trade Date | Quantity | Price |
| 3/28/2023 | 875 | $0.40 |

** For purposes of calculating losses in connection with SVB Financial Group complaint,
  the higher of actual sale price or average closing price from end of Class Period to sale date was used.